UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MELISSA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:06-cv-503-SEB-JMS |
| | ) | |
| ADVANCE/NEWHOUSE PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion for Summary Judgment**

As used in this Entry, "Thompson" refers to plaintiff Melissa Thompson and "Advance" refers to defendant Advance/Newhouse Partnership.

For the reasons explained in this Entry the motion for summary judgment filed by Advance must be **granted.**

**Background**

This case is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and involves Thompson's claim that she was discriminated against by Advance in a hiring decision and that the basis of the discrimination was her disability, multiple sclerosis, which requires her to use a motorized wheelchair. Advance contends that Thompson was not selected for the position for which she had interviewed because Advance could not verify that Thompson had either a high school diploma or equivalent certificate. Advance thus contends that its hiring decision was based on legitimate, nondiscriminatory reasons.

Advance seeks resolution of Thompson's claim through the entry of summary judgment. A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). However, the nonmoving party bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted).

Thompson has not opposed the defendants' motion for summary judgment and the time prescribed for him to have done so has passed. Accordingly, the factual assertions on which the motion for summary judgment is based and which are properly supported by the evidentiary record, are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified.

Construed in the manner most favorable to Thompson as the non-movant, the material facts pertinent to the motion for summary judgment are the following: In September 2005, Advance had 12 Customer Service Representative I ("CSR") positions it sought to fill. The CSR position requires a high school diploma or equivalent. Thompson applied for one of these positions. Her application involved two interviews, the first by telephone with Carmilla Ware, and the second in person at Advance's facility with Leah Strong ("Strong") and Meg Watson ("Watson"). Thompson used a scooter chair mobility device during her interview.

Thompson's in person interview occurred on September 10, 2005. When she arrived at Advance's facility that day, she filled out an application for employment prior to her interview with Strong and Watson. Thompson did not at any point mention to Strong and/or Watson that she had any difficulty with accessibility at Advance's facility. Further, at no time did Thompson ever ask for any accommodations to enable her to successfully complete the interview process, nor were any denied.

After Thompson successfully completed the in person interview, Strong forwarded Thompson's application to Merry Juerling, Human Resources Specialist ("Juerling"), for verification of information contained on her application. Neither Strong nor Watson advised Juerling that Thompson used a scooter mobility chair or that Thompson was disabled.

Advance's practice was to verify information contained on an applicant's application after that applicant successfully completed the interview stage of the hiring process. As part of Juerling's duties as Human Resources Specialist, Juerling reviewed all applications for applicants who successfully completed the interview stage to insure that each applicant met the minimum qualifications of the respective position, including the applicant's highest education level achieved, to conduct checks of all listed employment references, and to conduct a limited criminal history check before forwarding the resume to the applicable department for review.

Thompson's employment application indicated that she received a degree from Mary Carroll High School in Corpus Christi, Texas ("Mary Carroll"). Juerling was unable to confirm that Thompson had received a diploma or GED from Mary Carroll. On September 14, 2005, Juerling contacted Thompson by telephone to confirm that Thompson had received a diploma or GED from Mary Carroll. During that the telephone call, Thompson informed Juerling that she had not received a degree from Mary Carroll (as stated on her application), but had obtained a Certificate of General Educational Development ("GED") from Peoria, Illinois, under the name Melissa Davis.

On September 16, 2005, Juerling contacted the Office of the Regional Superintendent of Schools in Peoria, Illinois, Juerling faxed a request to verify issuance of a GED for Melissa Davis or Melissa Thompson. In response to Juerling's request, Advance received a facsimile notice from the Peoria Regional Superintendent of Schools' Office stating that it had no records for a GED received by a Melissa Davis or Melissa Thompson. Juerling's effort to verify Thompson's receipt of a GED based on information Thompson had provided therefore failed. Thompson never provided Juerling with verification that she received a GED in Peoria, Illinois, or Corpus Christi, Texas. At no time prior to the decision not to offer Thompson employment or at the time of the decision was Juerling aware of Thompson's disability or that she required the use of a scooter chair.

Because Advance was unable to verify Thompson's education for the achievement required for a CSR position, Thompson was not eligible for employment with Advance in that position. On or about September 20, 2005, Juerling spoke with Thompson regarding the status of her application. Juerling advised her that Advance had been unable to verify her education, and thus, would not be able to consider her application because she did not meet the minimum qualifications for the position. Advance's decision not to hire Thompson had nothing to do with Thompson's disability.

Twelve applicants were selected for the CSR positions and began training on September 19 and 20, 2005. Each of these individuals had a high school diploma or the equivalent, as verified by the Human Resources Department. One successful applicant for the CSR position, Walter Carter, has a disability and uses a scooter chair. Thompson would not have needed to ask for any type of accommodation to work at Advance had she obtained employment.

## Discussion

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). According to the ADA the term "discriminate" includes:

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(B).

"In this type of discrimination case, where the disparate treatment of a single employee is at issue, a plaintiff can produce direct or indirect evidence of discrimination," *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir. 1994), with the latter "involv[ing] the burden shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981)." *Id.*

Thompson has not offered any direct evidence of employment discrimination. This leaves for consideration the *McDonnell Douglas* burden shifting approach to prove her claim. *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir. 2001).

To establish a prima facie case under the ADA in a failure to hire case, a plaintiff must show: (1) that she is a disabled person within the meaning of the ADA; (2) that [he] is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer failed to hire her under circumstances which give rise to an inference that the failure to hire was based on her disability. *See Morgan v. Hilti,* 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted).

The first element of the foregoing formulation is not at issue through Advance's motion for summary judgment. In applying the *McDonnell Douglas* test to Thompson's claim under the ADA, the court concludes that Thompson has not established that she was qualified for the CSR position. This is the second element of a *prima facie* case as outlined above. For that reason, alone she fails to demonstrate a *prima facie* case of discrimination. *Waggoner v. Olin Corp.,* 169 F.3d 481, 484 (7th Cir. 1999) (disabled person must also meet employer's job qualifications to show a *prima facie* case of employment discrimination under the ADA); *DePaoli v. Abbott Labs.,* 140 F.3d 668, 674 (7th Cir. 1998) (same).

The third element of a *prima facie* case such as Thompson brings here is that Advance failed to hire her under circumstances which give rise to an inference that the failure to hire was based on her disability. The undisputed evidentiary record here leaves no question that Thompson's disability was *not* the basis on which Advance failed to hire her, and there is no evidentiary basis whatever on which to reach a contrary inference.

The second and third elements of a *prima facie* case are absent. "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993)(citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990)).

## Conclusion

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

As explained herein, Thompson has not come forward with evidence that establishes a *prima facie* case as to her claim. Even if she had, she has not shown that Advance's proferred reason for its action was pretextual. Accordingly, Advance's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

Date:   09/13/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana